<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **JOHN MULROY,** *on behalf of himself and all others similarly situated*, | Civil Action No.: 12-3669 (WJM) (MF) |
| **Plaintiff,** | |
| v. | |
| **NATIONAL WATER MAIN CLEANING COMPANY OF NEW JERSEY**, | <u>OPINION</u> |
| **Defendant.** | |

<u>FALK, U.S.M.J</u>

## I.   <u>INTRODUCTION</u>

Plaintiff John Mulroy filed this lawsuit in May 2012 in the Superior Court of New Jersey, Law Division, Essex County, asserting claims under the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a, *et seq*. and the New Jersey Prevailing Wage Act, N.J.S.A. 34:11-56.25, *et seq*. on behalf of himself and a putative class.  Specifically, Plaintiff claimed that his former employer, Defendant—National Water Main Cleaning Company of New Jersey ("NWMCC")—had failed to pay its employees for travel time to various jobsites and that the Company paid an incorrect prevailing wage rate to its employees in New Jersey.  Defendant removed the case to this Court in June 2012.  In March 2014, the parties entered into a Class Action Settlement, which provides for a maximum gross payment of $250,000, deposited into a

segregated account for the benefit of the Class, in exchange for the release of all claims.

Presently before the Court is the parties' motion for Final Approval of the Class Action Settlement.  [ECF No. 49.][1]  The parties seek approval of: (1) the Class Action Settlement; (2) an attorneys' fee award in the amount of $100,000; and (3) an incentive award for the named Plaintiff in the amount of $10,000.  A Fairness Hearing was held on October 23, 2014.  Only one objection was received.  [ECF No. 43.]   For the reasons that follow, the Court approves the Settlement and grants Plaintiff's fee requests.

## II.   <u>RELEVANT BACKGROUND</u>[2]

This is a class action case asserting claims under the New Jersey Wage and Hour Law and the New Jersey Prevailing Wage Act.   The specific allegations are that Plaintiff, and those similarly situated, were not paid for travel time to various jobsites and that Defendant paid an incorrect prevailing wage to its New Jersey employees.

After nearly two years of litigation, the case settled on a class-wide basis in January 2014. The parties' settlement creates two identically defined subclasses—one for each of the Complaint's allegations:

(1)  Current and former hourly, non-exempt field employees who performed work at jobsites in New Jersey between May 4, 2006 and January 31, 2014 (the "Prevailing Wage Settlement Class"); and

(2)  Current and former hourly, non-exempt filed employees who performed work at

---

[1] On March 25, 2014, the parties consented to the Undersigned's disposition of this dispositive motion pursuant to 28 U.S.C. § 636(c), which was approved by District Judge Martini. [ECF No. 40.]

[2] Limited portions of this Opinion are drawn from the parties' briefs.

jobsites in New Jersey between May 4, 2006 and January 31, 2014 (the "Hours Settlement

Class").

(Preliminary Approval Order ¶ 3; ECF No. 41.)

The settlement consists of a $250,000 gross payment by Defendant; an attorneys'

fee request of "up to $100,000"; and an incentive payment to Plaintiff Mulroy of $10,000.

A motion for preliminary approval of the settlement was filed in March 2014.

On April 9, 2014, the Undersigned entered an Order preliminarily approving the

settlement and providing notice to the class.  [ECF No. 41.]  Notice was provided to 151

"potential" class members.  (See Memorandum of Law in Support of Joint Motion for Final

Approval ("Br.") at 6.)  One (1) objection was received, which was submitted by Class Member

Daniel Conceicao.  (Id.)  At this point, 64 claim forms—representing 42% of the class and 41%

of the available funds—have been received.  (Id.)

On October 23, 2014, a Fairness Hearing was held.  Mr. Conceicao, the lone objector, did

not appear.

### III.   APPROVAL OF CLASS ACTION SETTLEMENTS

Under Rule 23, a court may only approve a class settlement after it has held a

hearing and determined that the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P.

23(e)(2).  The fairness of a class action settlement is most commonly evaluated by consideration

of the factors found in Girsch v. Jepson, 521 F.2d 153 (3d Cir. 1975):

> 1) the complexity, expense and likely duration of the litigation
> . . . ; (2) the reaction of the class to the settlement . . . ; (3) the
> stage of the proceedings and the amount of discovery
> completed . . . ; (4) the risks of establishing liability . . . ; (5) the
> risks of establishing damages . . . ; (6) the risks of maintaining the

> class action through the trial . . . ; (7) the ability of the defendants
> to withstand a greater judgment; (8) the range of reasonableness
> of the settlement fund in light of the best possible recovery . . . ;
> (9) the range of reasonableness of the settlement fund to a
> possible recovery in light of all the attendant risks of litigation.

The Girsch factors are a guide and the absence of one or more does not automatically render the settlement unfair.  See In re Am. Family Enter., 256 B.R. 377, 418 (D.N.J. 2000).  Rather, the Court must look at all the circumstances of the case and determine whether the settlement is within the range of reasonableness.  See In re AT&T Corp. Secs. Litig., 455 F.3d 160 (3d Cir. 2006).  In addition, a district court should consider whether the settlement is proposed by experienced counsel who reached the agreed-upon terms through arms-length bargaining.  See In re Warfain Sodium Antitrust Litig., 391 F.3d 516, 535 (3d Cir. 2004).

Settlement of litigation is generally favored by courts, especially in the class action setting.  "The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."  In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig., 55 F.3d 768, 784 (3d Cir. 1995); see also In re Warfain, 391 F.3d at 535 (noting the "overriding public interest in settling class action litigation").  At the same time, the district court functions as "a fiduciary who must serve as a guardian of the rights of absent class members" by ensuring that the proposed settlement is fair, reasonable, and adequate."  In re General Motors, 55 F.3d at 785.  In sum, the Court's evaluation of the settlement is guided by the Girsch factors, but the Court is "free to consider other relevant considerations and tacts involved in the settlement."  Colon v. Passaic County, No. 08-4439, 2012 WL 1457764, at *2 (D.N.J. Apr. 24, 2012); see also Alves v. Ferguson, 01-789, 2012 WL 6043272, at *8-9 (D.N.J. Dec. 4, 2012), aff'd, 559 Fed. Appx. 151 (3d Cir. 2014).

IV.     **APPLICATION OF THE GIRSCH FACTORS**

1.     **Complexity, Expense, and Likely Duration of the Litigation**

This factor is intended to "capture 'the probable cost, in both time and money, of continued litigation.'"  In re General Motors, 55 F.3d at 812 (quoting Bryan v. PPG Indus., 494 F.2d 799, 801 (3d Cir. 1974)). Where the complexity, expense, and duration of litigation are significant, the Court will view this factor as favoring settlement.  In re Prudential Ins. Co. of Am. Sales Practices Litig., 962 F. Supp. 450, 536 (D.N.J. 1997) ("Prudential I").

If this action were to continue, the parties would expend considerable time and money pursuing their claims.  Expert discovery and dispositive motions have not yet been scheduled.  If the action survived dispositive motion practice, a complex final pretrial order would need to be entered.  Numerous *in limine* motions raising important evidentiary and substantive disputes would be likely.  This would be followed by a trial, which could take weeks and involve the presentation of substantial, disputed evidence.  Moreover, Defendant represents that they would appeal any class action judgment that could be obtained, which could take additional years.  (Br. 6.)  By reaching a settlement now, the parties "avoid[] the costs and risks of . . . lengthy and complex" proceedings.  Ehrheart v. Verizon Wireless, 609 F.3d 590, 595 (3d Cir. 2010).  Since continued litigation would be time-consuming and expensive, settlement makes eminent sense. This factor weighs in favor of approving the settlement.

2.     **Reaction of the Class**

The second Girsch factor evaluates whether members of the class generally support or object to the settlement.  See In re General Motors, 55 F.3d at 812.  In order to properly evaluate the settlement, "the number and vociferousness of the objectors" must be examined.  Id.

Generally, "silence constitutes tacit consent to the settlement."  Id.

Here, the parties retained Rust Consulting to provide notice to the class, and 151 Class

Notices and Claims Forms were mailed.  (Br. 6; see Declaration of Stacy Roe, ECF No. 49-2.)

One objection was received.  [ECF No. 43.]  To date, 64 claim forms—representing 42% of the

class and 41% of the available funds—have been received.  (Id.)

### (i)   Objection from Daniel M. Conceicao

On June 2, 2014, the Court received a *pro se* submission from Class Member Daniel

Conceicao labeled "Objection to Settlement Agreement." [ECF No. 43.][3]  The objection, which

---

[3] Pursuant to Federal Rule of Civil Procedure 23(e)(2), a Fairness Hearing was held on October 23, 2014.  Mr. Conceicao did not appear.  At the Fairness Hearing, counsel for plaintiffs and counsel for defendants disagreed as to whether Mr. Conceicao was attempting to "opt out" of the settlement or whether he was "objecting" to the agreement.  Plaintiffs' counsel argued that Mr. Conceicao was attempting to "opt out" of the settlement—and not object— because he has already filed a separate *pro se* lawsuit in this District against Defendants that may include portions of his objection (*see* Civil Action No. 14-5146 (WJM)).  Defendant takes the position that Mr. Conceicao's filing should be treated exactly as it is labeled—i.e., as an "Objection to the Settlement Agreement."

The Court has treated Mr. Conceicao's filing as an objection to the Settlement Agreement and not as a request to opt out.  While the *pro se* submission lacks specificity in some areas, it is plainly and unambiguously labeled an "Objection" to the Settlement Agreement.  The Objection also argues points relating to the Settlement Agreement.  For example, as is discussed herein, it objects to the scope of the release; objects that certain benefit issues are supposedly not fully addressed in the settlement; and objects to the fee requests.  (Objection at 1-2.)  The substance of the objection is therefore focused on the settlement of this case.  In plain language, the submission is "objecting" to the parties' agreement.

Opting out of a settlement is a different process than objecting to a class settlement and involves different considerations.  No statement of "objections" is appropriate when attempting to "opt out."  While *pro se* parties are entitled to some leniency in the interpretation of their papers, the Court believes it is clear that Mr. Conceicao has filed an objection to the settlement. At best, Mr. Conceicao is attempting to object to the settlement conditionally, and then if his demands are not met, perhaps opt out.  A party may not, however, conditionally object to a settlement; nor can a class member purport to both object and opt out. See, e.g., In re Ins. Brokerage Antitrust Litig., 282 F.R.D. 92, 110 (D.N.J. 2012); see also Olden v. LaFarge Corp., 472 F. Supp. 2d 922, 931 (E.D. Mich. 2007) ("If an absent class member ... desires to affect the settlement by filing objections, then the objector must abide the result and be bound by the

is 3 pages of text and 9 pages of exhibits, is somewhat difficult to discern.  It appears that Mr. Conceicao's objection is based on three arguments:  (1) the allegation that the release is excessively broad and will result in the release of future claims; (2) the assertion that settlement fails to take into account certain wage-and-benefit related issues; and (3) the amount of the attorneys' fee sought and the incentive payment to Plaintiff Mulroy.

On October 15, 2014, the parties submitted a joint brief responding to the Objection, stating essentially that: (1) the Settlement Agreement bars claims only through its Effective Date, which is the standard practice, and that future claims are unaffected; (2) all pertinent wage and hour issues were investigated by counsel and are adequately addressed in settlement; and (3) the fee payments are reasonable.  [ECF No. 50.]

The objection has no merit and is not a basis to reject the settlement.  First, the objection to the breadth of the release is misguided.  The objector seems to assert that "those employees that choose to do nothing should not have to be expected to be barred from any future claim a person may have for wages, hours, and claims," and that Defendant ""should only be released for hourly wages and not for giving up legal rights for any other legal claim any person may have from past, present or future if the company chooses not to pay any future benefits they will not be bound [sic] because of the release."  (Objection at 2.)  However, the Settlement Agreement does not effect the legal rights of future NWMCC employees.  The Settlement Classes are defined to

_____

consequences.  If the settlement is unpalatable, the class member may opt out and avoid the binding consequence of the settlement judgment.  To allow the class member to have it both ways, however, would countenance the practice of influencing litigation—or attempting to do so—in which the class member really has no stake.  That result is unacceptable.").  Based on the above, the Court finds Mr. Conceicao's filing to be an objection to the settlement and has considered it accordingly.

include only employees who worked for the company through January 31, 2014.  In addition, the release provision of the Settlement Agreement encompasses only claims incurred on or before the Effective Date of the Agreement.  See Settlement Agreement §§ 1(gg), 11(a).  To the extent that Plaintiff's objection is that class members who do not opt-out of the settlement will be bound by the terms of Agreement, it plainly lacks merit; indeed, such a result is one of the primary functions of Rule 23 class actions.  See, e.g., Dewey v. Volkswagen Aktiengesellschaft, 681 F.3d 170, 183 (3d Cir. 2012).

Second, Mr. Conceicao appears to object on the grounds that wage and hour claims in this case were not adequately investigated.  The Court sees no evidence of this at all.  Plaintiffs are represented by experienced counsel.  The case was settled only after discovery was ongoing and the parties had "interviewed witnesses and exchanged thousands of pages of job records, payroll and other financial information."  (Br. at 4.)  The Undersigned also personally oversaw settlement negotiations and was privy to counsel's familiarity with the facts and the law.[4]

Third, it appears Mr. Conceicao objects to "benefits issues" dealing with deductions from his pay for company health insurance in which he was apparently enrolled, which is common practice and does not bear on the fairness of the settlement.

In sum, the reaction of the class to the settlement has been overwhelmingly positive.  The single objection received does not raise any meritorious concerns and is no basis to set aside the

---

[4]  The participation of an independent mediator in settlement negotiations "virtually insures that the negotiations were conducted at arm's length and without collusion between the parties."  Bredbenner v. Liberty Travel, Inc., 09-905, 2011 WL 1344745, at *10 (D.N.J. Apr. 8, 2011); Kolar v. Rite Aid Corp., No. 01-cv-1229, 2003 WL 1257272, at *3 (E.D. Pa. Mar. 11, 2003) (noting that involvement of magistrate judge in settlement process "provides a great deal of comfort at the threshold of our fairness consideration").

settlement.  This factor weighs heavily in favor of approving the settlement.

### 3.        Stage of the Proceedings and Amount of Discovery Completed

The third <u>Girsh</u> factor requires that the Court consider the "degree of case development that Class Counsel have accomplished prior to Settlement," including the type and amount of discovery already undertaken.  <u>In re General Motors</u>, 55 F.3d at 813.  The Court considers whether the amount of discovery completed in the case has permitted "counsel [to have] an adequate appreciation of the merits of the case before negotiating."  <u>In re Schering–Plough /Merck Merger Litig.</u>, No. 09–1099, 2010 U.S. Dist. LEXIS 29121 at *30 (D.N.J. Mar. 26, 2010).  The discovery analyzed encompasses both formal and "informal" discovery, including discovery from parallel proceedings, companion cases and even third parties, such as experts or witnesses.  <u>Id.</u>

This factor weighs heavily in favor of settlement.  This is not a case that was settled shortly after it was filed with minimal investigation.  This case is more than two years old.  The discovery period was extensive, and the parties exchanged thousands of documents and litigated motions.  Given the proceedings, this matter is appropriate for final settlement.

### 4.        The Remaining Girsch Factors Support Final Approval[5]

The <u>Girsch</u> factors relating to the "risks" in this matter survey the "possible risks of litigation by balancing the likelihood of success . . . against the immediate benefits offered by

---

[5]  The remaining <u>Girsch</u> factors are: the risks of establishing liability; the risks of establishing damages; the risks of maintaining the class action through the trial; the ability of the defendants to withstand a greater judgment; the range of reasonableness of the settlement fund in light of the best possible recovery; and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. <u>See</u> <u>Girsch</u>, 521 F.2d at 157.

settlement." Prudential II, 148 F.3d at 319.  Where the risks of litigation are high, these factors

weigh in favor of the settlement.  See id.  To properly weigh these considerations, the Court

should rely to a certain extent on the estimation provided by class counsel, who is experienced

with the intricacies of the underlying case. See Weber v. Gov't Empls. Ins. Co., 262 F.R.D. 431,

445 (D.N.J. 2009) (quoting Perry v. FleetBoston Fin. Corp., 229 F.R.D. 105, 115 (E.D. Pa.

2005)).

      Here, the risks include the genuine possibility that Plaintiff may not be successful in

proving liability of Defendant at trial, that summary judgment could be granted in Defendant's

favor, and/or that class certification could be denied or any certified class may be decertified

before a trial.  See In re Prudential Ins., 148 F.3d at 321; see also Alves, 2012 WL 6043272, at

*19-22.  Liability remains completely disputed, and there is no guarantee that Plaintiff would

prevail.  The settlement is a reasonable compromise that weighed these risks.

      The Girsh factors relating to "reasonableness" collectively "evaluate whether the

settlement represents a good value for a weak case or a poor value for a strong case." In re

Warfarin Antitrust Litig., 391 F.3d at 538.  "These factors test two sides of the same coin:

reasonableness in light of the best possible recovery and reasonableness in light of the risks the

parties would face if the case went to trial."  Id.  Here, the $250,000 settlement after two years of

litigation represents certainty and resolution for Plaintiffs, who otherwise would face an

uncertain future regarding establishing liability and damages.  The Court agrees that the

settlement meets the requirements of a fair, reasonable settlement in light of the attendant risks.

## V.    THE ALLOCATION PLAN IS REASONABLE

      The Court must also review the proposed plan of allocation of the Settlement to ensure

that it is "fair and reasonable to all participants in the fund." <u>Wals v. Great Atl. & Pac. Tea Co.</u>, 726 F.2d 956, 964 (3d Cir. 1983). Generally, where a plan of allocation "reimburses class members based on the type and extent of their injuries" it will be found reasonable. <u>In re Ikon Office Solutions, Inc.</u>, 194 F.R.D. 166, 184 (E.D. Pa. 2000).  In the present action, the Plan of Allocation is set forth as:

> NWMCC will pay up to, but no more than, $250,000 (the "Maximum Gross Settlement Amount") to settle the Action. The Maximum Gross Settlement Amount represents the maximum amount that Defendant will pay, inclusive of all Gross Individual Settlement Payments to Authorized Claimants, Class Counsel's Fees (inclusive of Class Counsel's costs), any Incentive Award, and Administration Costs. The Maximum Gross Settlement Amount shall be reduced by the total of (I) the unclaimed settlement payments of Settlement Class Members who do not submit a valid Claim Form before the Bar Date or who submit a valid Request for Exclusion, and (ii) the unclaimed settlement payments of Authorized Claimants who do not cash their settlement checks within ninety (90) days (the "Adjusted Gross Settlement Amount").
> The Net Settlement Amount will be distributed to Settlement Class Members who do not submit a valid Request for Exclusion and become Authorized Claimants by submitting a valid and timely Claim Form. The Net Settlement Amount is the Maximum Gross Settlement Amount less Class Counsel's Fees, the Incentive Award, and Administration Costs. The Net Settlement Amount will be divided between the sub-classes, with 75% of the Net Settlement Amount allocated to the Hours Settlement Class, and 25% of the Net Settlement Amount allocated to the Prevailing Wage Settlement Class.
> Counsel for the Settlement Class will apply for an award of attorneys' fees and costs, which will not exceed $100,000 (forty percent (40%) of the Maximum Gross Settlement Amount). Plaintiff will apply for a participation award for his efforts in litigating the case, which will not exceed $10,000 (the "Incentive Award").

(Br. 10.)

The parties' plan of allocation seeks to compensate the Class Members based on the extent of their injuries.  This is fair and reasonable under Third Circuit precedent.  <u>In re Ikon</u>

Office, 194 F.R.D. at 184.[6]

## VI.  THE FEE REQUESTS ARE REASONABLE

Class counsel also seeks an award of attorneys' fees and reimbursement of expenses in the amount of up to $100,000, or 40% of the total settlement amount.  This is a common fund case in which fees and costs come directly out of the recovery to the class.  See generally In re Cendant Corp. Litig., 264 F.3d at 256.  The Court notes preliminarily—other than the one objection that has already been addressed—that it has not received a single objection pertaining to the proposed amount of fees.  See Lenahan v. Sears, Roebuck & Co., 2006 WL 2085282, at *19 (D.N.J. July 24, 2006) ("The lack of significant objections from the Class supports the reasonableness of the fee request.").

Courts in the Third Circuit employ the percentage-of-recovery method to award attorneys' fees in common fund cases.  See In re Gen. Motors, 55 F.3d at 821 (citing Court

---

[6] In a single paragraph at the end of their joint brief, the parties dispute whether Plaintiff may include in the settlement two class members whose Claims Forms where submitted after the Bar Date.  (Br. 11-12.)  Plaintiff claims that these individuals' forms where late because they were moving and did not receive their mail.  (Id.)  Defendants argue that allowing the late claims contravenes the Court's Preliminary Approval Order, and that there is no "evidence" that supports Plaintiff's claims that they did not receive the forms in a timely fashion.  (Id. at 12.) The parties cite no authority to support their argument.  Nevertheless, it is within the Court's discretion to accept late claims.  In re Orthopedic Bone Screw Prod. Liab. Litig., 246 F.3d 315, 321-22 (3d Cir. 2001); see also DaSilva v. Esmor Correctional Servs. Inc., 167 Fed. Appx. 303, 307 (3d Cir. 2006).  Courts presented with late claims generally consider whether there is "excusable neglect."  See In re Orthopedic Bone Screw, 246 F.3d at 321-22 (citing In re Cendant Corp. Prides Litig., 233 F.3d 188, 196 (3d Cir. 2000)).  Relevant factors to consider include: the danger of prejudice to the non-movant; the length of the delay and its impact on judicial proceedings; the reason for the delay; and whether the movant has shown good faith.  See, e.g., In re Cendant Corp., 233 F.3d at 196.  The late claims are allowed.  The Class Members have represented that the Claims were not timely submitted because they were moving.  There is no indication of bad faith.  More importantly, there is absolutely no prejudice or delay that will result from allowing the late claims.

Awarded Attorney Fees, 108 F.R.D. 237, 255 (1985)); see also Manual for Complex Litigation (Fourth) § 14.121 at 186 (2004).   Indeed, it is the prevailing methodology used by courts in this Circuit for wage-and-hour cases. See, e.g., In re Janney Montgomery Scott, LLC, 2009 WL 2137224, at *14 (E.D. Pa. July 16, 2009); Chemi v. Champion Mortg., No. 05-1238, 2009 WL 1470429, at *10 (D.N.J. May 26, 2009); Lenahan, 2006 WL 2085282, at *19.   Under the percentage-of-recovery approach, the Court must determine whether the percentage of total recovery that the proposed award would allocate to attorneys fees is appropriate "based on the circumstances of the case." In re Cendant Corp. Litig., 264 F.2d at 256. The Court is primarily guided by seven factors identified by the Third Circuit:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195 n.1 (3d Cir. 2000) (citations omitted); see also In re AT&T Corp., 455 F.3d 160, 166 (3d Cir. 2006) (noting that courts should also consider any other factors that are "useful and relevant" under the facts of each case) (citations omitted). Each case is different, however, and in some circumstances one single factor may outweigh the rest. See In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 301 (3d Cir. 2005) (citing Gunter, 223 F.3d at 195 n.1).

Only a brief review of the Gunter factors is required to confirm that the attorneys' fee sought is reasonable.  Plaintiff's counsel—Ravi Sattiraju, Esq—has submitted a certification detailing how he investigated the matter pre-suit; performed extensive research into novel areas

of Wage and Hour Law; filed the Complaint; argued motions; conducted discovery; and negotiated this settlement.  (Certification of Ravi Sattiraju, Esq. ¶ 2.)  All of this work was done at an hourly rate of $500.00, which is a reasonable amount for experienced employment counsel. (See Sattiraju Cert., ¶ 2(g).)  In addition, no objection to the fees sought—beyond that already addressed herein—has been received.  Finally, the Court notes that Plaintiffs' counsel diligently prosecuted this case and performed exemplary work on behalf of the Class Members for years. The Court observed the results of this expenditure of legal effort and concludes it was essential to achieving the settlement for Plaintiffs.  For these reasons, the Court approves the parties' negotiated attorneys' fees.[7]

---

[7] Plaintiff also seeks approval of an "incentive award" to Plaintiff Mulroy in the amount of $10,000.  An incentive/participation award has been recognized as compensation for the lead plaintiff's role in bringing litigation on behalf of those who might otherwise have been unable or unwilling to do so.  See, e.g., Cook v. Neidert, 142 F.3d 1004, 1016 (7th Cir. 2000); Bowens v. Atl. Maint. Corp., 546 F. Supp. 2d 55, 80 (E.D.N.Y. 2008).  "Incentive awards are not uncommon in class action cases and are within the discretion of the court."  Frank v. Eastman Kodak Co., 228 F.R.D. 174, 187 (W.D.N.Y. 2005); see Young v. Tri-County, No. 13-5971, 2014 WL 1806881, at *8 (E.D. Pa. May 7, 2014) .  Plaintiff Mulroy brought this litigation despite potential risk to his future employability in the field.  The incentive award payment is approved.

<u>**CONCLUSION**</u>

Based on all of the reasons set forth above, the parties' motion for joint approval of settlement [CM/ECF No. 49] is **GRANTED**.  The Court hereby **approves** the parties Settlement Agreement and **grants** Class Counsel's request for up to $100,000 in attorneys' fees and **grants** the request for a $10,000 incentive award to Plaintiff Mulroy.

An appropriate Order will be entered.

**s/Mark Falk**_____
**MARK FALK**
**United States Magistrate Judge**

**DATED: December 12, 2014**

15